## Ogden *against* Gibbons.

*L.* and *F.*, to whom the Legislature had granted the sole and exclusive right, for a term of years, of using and navigating boats or vessels, by steam or fire, in the waters of this state, assigned to *J. R. L.*, who assigned to the plaintiff, the exclusive right of navigating steam boats, &c. between the city of *New-York* and *Elizabethtown Point,* in *New-Jersey,* for a certain period: *Held,* that the running or employing steam boats, by the defendant, over the waters of this state, for the transportation of passengers, to and from those two places, directly, or circuitously, by using one or more steam boats, and shifting the passengers from one boat to another, at any intermediate point between those two places, without the consent of the plaintiff, or his assigns, was a violation of the right of the plaintiff; and an injunction was granted to restrain the defendant from so using or navigating steam boats, to the injury of the plaintiff.

*Dec. 4th.*

PETITION of the plaintiff, stating, that in *October,* 1818, he filed his bill, charging, that he had obtained an exclusive right under Messrs. *Livingston* and *Fulton,* to navigate, by boats moved by fire and steam, between *New-York* and

*Elizabethtown*, to the whole extent of the township; that being in the possession of such right, he was unlawfully interrupted in the exercise of it by the defendant, who was running, without any license, under the exclusive right granted by law to *L.* and *F.*, two steam boats, called the *Bellona* and the *Stoudinger*, between those two places; that upon that bill an injunction was granted, restraining the defendant and his agents, &c. from navigating, with steam boats, the waters of this state, between the city of *New-York* and *Elizabethtown;* that on the 18th of *August* last, the defendant filed his answer, and then moved to dissolve the injunction, on the matter set up by way of defence and title in the answer, viz: 1. a coasting license under the laws of the *United States;* 2. a license under the laws of this state relative to steam boats.    That the motion to dissolve the injunction was denied, on the ground, that the coasting license did not interfere with the exclusive right granted to *L.* and *F.*, under the laws of this state, and that the title set up under *L.* and *F.*, was subsequent to the grant under them to the plaintiff, and could not affect it; that the injunction was, nevertheless, modified, so as to confine the operation of it to the whole of the waters in the bay of *New-York*, on the passage or route between the city of *New York* and *Elizabethtown*, and not to apply it to the waters of the Sound, between *Staten Island* and the state of *New-Jersey*.*

The petition further stated, that the defendant, after the issuing of the injunction, and the service and notice thereof, and for more than three months past, had procured, and still continued to procure, for a stipulated price, the steam boat *Nautilus*, belonging to *Daniel D. Tompkins*, which usually runs between the *city of New-York* and the *Quarantine Ground* on *Staten Island*, to aid and assist him, the defendant, in the transportation of passengers, travelling and going to and from *Elizabethtown*, to and from *New-York;* that this was done by so running in concert with the steam boat *Bellona;* that the latter boat, almost daily, and agreea-

1819.

OGDEN
v.
GIBBONS.

* *Ante*, pp. 48. 150. 164.

1819.

OGDEN
v.
GIBBONS.

bly to public advertisement, had left, during the time aforesaid, and still continues to leave the wharf of the defendant, in the township of *Elizabethtown*, with such passengers, and passes with them, on the direct route between those places, until she is met or overtaken by the steam boat *Nautilus*, either on the waters of *Staten Island* sound, or of *New-York* bay, but more frequently on *New-York* bay, into which last mentioned boat such passengers are then received, and in her transported on the waters of *New-York* bay, to the city of *New York* directly, and on the direct route between that place and *Elizabethtown*. That in like manner, and under the like procurement and concert, the *Nautilus*, during the time aforesaid, almost daily, had left, and still continues to take on board at, and leave, the city of *New-York*, with passengers travelling and going from thence directly to *Elizabethtown*, and passes with them on the waters of the bay of *New-York*, on the direct route between those two places, until she is met by the steam boat *Bellona*, either on the waters of the bay of *New-York*, or of *Staten Island* sound, but more frequently on the waters of *New-York* bay, into which last mentioned boat such passengers are then received, and in her transported directly to the dock of the defendant, in the township of *Elizabethtown*, on the direct route thereto, from the city of *New-York*. That the steam boat *Bellona* sometimes takes on board at, and leaves the city of *New-York*, with passengers travelling and going thence to *Elizabethtown*, and on her passage to that place with such passengers, passes over the waters of the bay of *New-York*, to the *Quarantine Ground* on *Staten Island*, where she stops and touches for a few minutes, and then proceeds on with such passengers, over the waters of the bay of *New-York*, until she enters *Staten Island* sound, and from thence passes on through that sound, in the direct course to the defendant's dock in *Elizabethtown*, where she lands the passengers. That the *Bellona* sometimes takes passengers from *Elizabethtown* to *New-York*, on the same

circuitous route. That the steam boat *Stoudinger*, belonging to the defendant, during the time aforesaid, and almost daily, since the beginning of *August* last, takes on board at, and leaves the *Quarantine Ground*, on *Staten Island*, with passengers travelling and going from *New-York* to *Elizabethtown*, and on the passage to that place passes over the waters of the bay of *New-York* into *Staten Island* sound, and so up to *Elizabethtown*, where she lands her passengers. That, in like manner, the *Stoudinger* takes passengers, who are travelling and going from *Elizabethtown* to *New-York*, on the same route from *Elizabethtown* to the *Quarantine Ground* on *Staten Island*. That such running of the boats aforesaid is injurious to the rights of the plaintiff, and a violation of the injunction. That the injunction was personally served upon *Cornelius Vanderbelt*, the captain of the *Bellona*, but not upon the defendant, as he resides out of this state. That the defendant has, however, full knowledge of the same.

The petition concluded with a prayer, for an attachment against the defendant, and the captain of the *Bellona*, for disobeying the injunction.

This petition was sworn to by the plaintiff, and being duly served, a rule was granted, that the defendant, and others, show cause against it.

In support of the motion, the plaintiff, on the day assigned for showing cause, produced and read two affidavits:

1. Of *John Carlton*, the captain of the steam boat *Atalanta*, in support and confirmation of the facts stated in the petition.

2. The affidavit of *Thomas Van Vord*, jun. stating, that on the 12th of *November* last, the steam boat *Stoudinger*, belonging to the defendant, left the city of *New-York* with passengers for *Elizabethtown*, and proceeded on in her direct route, with such passengers, for *Elizabethtown*.

3. Several other affidavits were, also, read in support of the charges in the petition.

VOL. IV. 23

1819.

OGDEN
v.
GIBBONS.

1819.

,OGDEN
v.
GIBBONS.

In opposition to the motion, and on the part of the defendant, it was stated by the defendant, in his affidavit, that on or about the 15th day of *May* last, he entered into an arrangement with *D. D. Tompkins*, for the running of his steam boat *Bellona*, from *New-Brunswick*, to his wharf at *Halsted's Point*, in *Elizabethtown*, and from thence to meet the steam boat *Nautilus*, owned by the said *D. D. Tompkins*, on her way from *Staten Island* to *New-York*, and put on board her, on the waters of *New-Jersey*, the passengers to be brought hither in the *Bellona*, and the said passengers to be transported and carried thence in the *Nautilus*, to the city of *New-York*. That passengers who might offer for the *Bellona*, to be taken and received by the *Nautilus*, at the city of *New-York*, and transported and carried in her, on her return passage for *Staten Island*, to the *Bellona*, in the *Kills*, or *Sound*, aforesaid, and there to be put on board the *Bellona* from the *Nautilus*, and transported and carried thence in the *Bellona*, to *Halsted's Point* aforesaid. That by that arrangement, the said *D. D. Tompkins* was to receive, and uniformly received, the price of twenty-five cents for the passage in the *Nautilus*, which was one half of the whole fare from *New-York* to *Halsted's Point*. That the defendant believed this arrangement was proper, and not a violation of the injunction. That the *Bellona* has so run under that arrangement, ever since the middle of *May* last. That he understood, from what passed when *Cornelius Vanderbelt* was brought before the Chancellor, in *June* last, for an alleged breach of the injunction, that the transportation of passengers to and from *New-York*, and to and from *Elizabethtown*, under the above arrangement, was lawful, and agreeable to the opinion of the Chancellor. He disclaimed all intentional violation of the injunction.

The affidavit of *Cornelius Vanderbilt*, the captain of the *Bellona*, admitted the running of the *Bellona*, and the interchange of passengers between her and the *Nautilus*, as charged by the plaintiff, and admitted in the affidavit of the

defendant; and he stated, that he understood from the opinion of the Chancellor, on the decision upon the attachment in *June* last, that such a mode of employment of the boats was lawful, and not a violation of the injunction, and he disclaimed all such intention.

The plaintiff in *propria persona.*

*S. Jones*, contra.

THE CHANCELLOR. The question arising upon this motion, is, whether the employment of the steam boat *Bellona*, by the defendant, in the transportation of passengers between *Elizabethtown Point* and the city of *New-York*, with the assistance of the steam boat *Nautilus*, is not a breach of the injunction heretofore granted in this cause.

It has been already declared, that the plaintiff was entitled, under a grant from *Livingston* and *Fulton*, to the exclusive right of navigating steam boats upon the waters of this state, on the route or passage between the city of *New-York* and *Elizabethtown*, in *New-Jersey*. Neither the representatives of *L.* and *F.*, nor any other person claiming under a subsequent grant from them, or acting without such grant, could interfere with, or disturb the plaintiff in the enjoyment of his exclusive privilege. This Court is specially required, by statute, to protect, by injunction, the steam boat monopoly granted to *L.* and *F.*, from all disturbance or invasion. It was observed, when the decretal order was pronounced, on a former motion in this cause, that the grant under *L.* and *F.*, of an exclusive right to run steam boats between *New-York* and *Elizabethtown*, was intended to comprehend the entire benefit of all the travelling and passengers going to and from *Elizabethtown* and *New-York*. It meant to embrace the whole stream of intercourse between these two places. It included the use of the waters, on the usual passage between those places, to the entire and

1819.

Ogden
v.
Gibbons.

absolute exclusion of the use of these waters, (so far as the jurisdiction of this state extended,) on such a passage or route, by any other steam boat. It necessarily, and from its very nature, as an exclusive grant, excluded all contiguous and injurious competition.

It appears to me, therefore, that the attempt of the defendant to transport passengers between *Elizabethtown* and the city of *New-York*, by the aid of the *Nautilus*, is a violation of the plaintiff's exclusive right, and an evasion of the spirit and intention of the injunction. The *Nautilus*, employed under his procurement, and by an arrangement to which the defendant was a party, became, for this purpose, and for the occasion, *his boat*. Any other construction might render the grant from *L*. and *F*., to the plaintiff, vain and illusory. Whatever pretensions the *Nautilus* may have to navigate the waters of this state under *L*. and *F*. (and she can have no right but under them,) these pretensions cannot interfere with the right of the plaintiff, to the exclusive navigation between *Elizabethtown*, and *New-York*, because his is the prior grant; and what *L*. and *F*. could not do themselves, they could not do by their assignee. The assignee can only take what they were competent to give, and they had already parted with their right to the navigation in question.

The right of the plaintiff to transport passengers between *New-York*, and *Elizabethtown*, may be compared to a right of ferriage between two given points; and it is well settled, that where an exclusive right of ferriage exists between two places, no rival ferry can be set up within the same course and line of travel. The just and rational principles of the common law considered every such attempt as a violation of right. Indeed, it must be plain and obvious to the common sense of every man, that the defendant is here doing, with the assistance, and under the cover of the steam boat *Nautilus*, what he cannot do directly with his own boat, the *Bellona*, and yet that the result, and the injurious effects to

the plaintiff, are precisely the same. The *Nautilus* has no more right to be employed in the ferriage belonging to the plaintiff, than the *Bellona*, and yet she is so employed by the act and procurement of the defendant. The two boats, by their joint and concerted operation, are engaged in the very business exclusively granted to the plaintiff. They are engaged in transporting passengers to and from *Elizabeth-town* and *New-York*, and it would be a reproach to the justice of this Court, if such a contrivance could be successful.

The circuitous route between *Elizabethtown* and *New-York*, by the way of the *Quarantine Ground*, is equally a violation of the right of the plaintiff, and of the injunction which was intended to prevent it. Such a small and unessential deviation from the direct route, cannot vary the nature of the act so long as the intention is still the same. The object appears equally to transport passengers and carry on the travelling between *New-York* and *Elizabeth-town*, and that design cannot lawfully be pursued by any person but the plaintiff, because he is in possession of the exclusive right. While that is the object of the circuitous route, the injury is the same, and the abuse equally within the reach of the injunction. In short, every effort and arrangement, however specious or well devised, for the regular and connected transportation of passengers between *New-York* and *Elizabethtown*, by steam boats, is a trespass on the exclusive right of the plaintiff, and must now be abandoned.

But the defendant, and one of his agents, rely for their excuse upon the impression which they had received of the decision made by me in the case of *Vanderbilt*.(a)

There was considerable desultory conversation, in the course of the argument in that case; and it is probable that

(a) He was the master of the *Bellona*, and was brought before the Court, on an *attachment* for disobeying the injunction before issued. Vide *Livingston* v. *Ogden and Gibbons*, ante, p. 48. Matter of *Vanderbilt*, ante, p. 57 ; and *Ogden* v. *Gibbons*, ante, p. 150—164.

1819.

OGDEN
v.
GIBBONS.

I may have made observations which misled the defendant. The nature and extent of the plaintiff's right had not then been discussed and duly examined; and what I may have said, must have been in the course of incidental conversation, to which no importance ought to have been attached. The decision is upon record, and to that the party should have looked for his guide, and my opinion was reduced to writing at the time; neither the decretal order, nor the reasoning in support of it, afford the least colour for the impression which has been received.

It is this misapprehension of the defendant, and of Captain *Vanderbelt* that induces me to pause upon the motion for the attachment. I shall be content, therefore, with making a new order in the case, and of withholding the attachment, on condition of the defendant paying the costs of this application. The defendant, by his answer, admits knowledge of the injunction, and professes obedience to it.

The following *Order* was accordingly entered:

"The motion for attachment in this cause being opened by the plaintiff in person, and several affidavits in support of the motion being read; and the said motion being opposed by Mr. *S. Jones,* counsel for the defendant, and several affidavits read on his part, and due deliberation being thereupon had, it is hereby declared, that the running or employment of the steam boats *Bellona, Stoudinger,* and *Nautilus,* or either of them in the said petition mentioned, or any other boats propelled by steam, over waters within the jurisdiction of this state, for the transportation of passengers to and from the city of *New-York* and *Elizabethtown,* in the state of *New-Jersey,* whether such transportation be effected directly or circuitously, or by means of one or more boats, or by shifting from one boat to another, at any intermediate point between these two places, without the license or consent of the plaintiff or his assigns, is an infringement of his exclusive right to navigate, for those purposes, with steam boats, over the waters of this state, between the city

of *New-York* and *Elizabethtown*, and a violation of the in-junction issued to ~~prohibit~~ that exclusive right.

And it is further declared and ordered, that a copy of the said injunction, and of this order, or of any other order of this Court, in the premises, delivered to the acting master, or in case of his refusal, to recieve the same, left, in some conspicuous place, on board of the said steam boats, or either of them, or of any other steam boat employed, as aforesaid. shall be deemed and taken to be good service thereof, on the master of the boat in which the same shall have been so left; and further, that the service of the said injunction, or other order as aforesaid, on the solicitor for the defendant, shall be taken and deemed good service on the defendant.

And it is further ordered, that the rule to show cause in this cause, be discharged, on payment, by the defendant, of the costs of this application, and on default thereof, that the attachment, as against the defendant, issue."